UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GENE FAUGHT,<br><br>                Plaintiff,<br>  v.<br><br>CCA, BRYCE AITKEN, and Dr. DAVID AGLER,<br><br>                Defendants. | Case No. 1:12-cv-00574-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendants' Motion to Dismiss (Dkt. 13). The Court has determined that the decisional process would not be aided by oral argument. Accordingly, the Court issues the following decision based upon the parties' briefs.

## BACKGROUND

On November 17, 2010, plaintiff Gene Faught, an Idaho prison inmate, hurt his wrist while playing handball at Idaho Correctional Center ("ICC"). He submitted a Health Services Request requesting an x-ray evaluation and authorization for a bottom bunk. The prison doctor evaluated his x-rays and denied his bottom bunk request on January 26, 2011. That same day Faught filed an Offender Concern Form indicating that he believed his medical treatment was negligent because he was denied a bottom bunk. ICC responded that he did not qualify for a bottom bunk.

MEMORANDUM DECISION AND ORDER - 1

Faught then filed a formal Grievance form. ICC rejected the grievance as untimely and because it did not attach his Offender Concern Form. Faught re-filed the grievance, attaching the Offender Concern Form. ICC denied it as untimely as well. Faught then filed a formal Appeal. ICC denied the appeal, noting that an inmate cannot appeal a grievance returned without action. This lawsuit followed.

## LEGAL STANDARD

Under the Prison Litigation Reform Act ("PLRA") a prisoner must properly exhaust available administrative remedies before filing a federal lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a). In the Ninth Circuit, failure to exhaust nonjudicial remedies which are not jurisdictional are treated as a matter in abatement subject to an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). When deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the district court may look beyond the pleadings and decide disputed issues of fact. *Id.* "If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Id.*

## ANALYSIS

1. **ICC Grievance Procedure**

The Idaho Department of Correction ("IDOC") uses a three-step administrative grievance process, which is followed by ICC. *Purcell Decl.*, Dkt. 13-2, Ex. D. Under the grievance process, inmates must first attempt to resolve their issue informally by submitting an Offender Concern Form. ICC has seven days to respond. *Id.* If the issue is

not resolved informally, and the inmate wishes to pursue it further, he must file a Grievance/Appeal Form, with the "Grievance" option checked. *Id.* The inmate must also attach the Offender Concern Form and any supporting documentation to the Grievance Form, and indicate his suggested solution to the problem. *Id.* The Grievance Form must be filed within thirty days of the incident or problem which is the basis of the grievance. *Id.* A Grievance Form may be rejected and returned to the inmate if it is filed incorrectly, and the inmate must re-file a Grievance Form. *Id.*

     A Grievance Coordinator assigns the grievance to the staff member most capable of responding to it. *Id.* That staff member has ten days to answer and return the grievance to the Grievance Coordinator. *Id.* The Grievance Coordinator then forwards the grievance and staff response to a "reviewing authority," who is typically a deputy warden. Within fourteen days of receiving the grievance, the reviewing authority must review the grievance, the staff response, and any applicable rules, policies, procedures etc, and either deny, modify or grant the solution suggested by the inmate. *Id.* He then forwards the grievance to the Grievance Coordinator, who files the original grievance form and returns a copy to the inmate with the responses of the assigned staff member and the reviewing authority. *Id.*

     If the inmate is not satisfied with the response to his grievance, and he wishes to continue the grievance process, he must file an appeal within five days of receiving the response to his grievance. *Id.* The appeal form is the Grievance/Appeal form, with the "Appeal" box checked. *Id.* The inmate must attach the original Grievance Form to the

**MEMORANDUM DECISION AND ORDER - 3**

Grievance Appeal Form and explain why the grievance finding should be changed. *Id.* When the Grievance Coordinator receives an appeal, he logs the appeal and forwards it to the "appellate authority." *Id.* The appellate authority has fourteen days to issue a final response denying, modifying or granting the appeal. *Id.* The appellate authority then returns the completed Grievance Appeal Form to the Grievance Coordinator, who logs it and forwards it on to the inmate, which concludes the administrative process. *Id.*

2.     **Defendants' Motion to Dismiss**

Defendants ask the Court to dismiss the claims against Mr. Aitken and narrow the claims against ICC and Dr. Agler because Faught failed to adequately comply with the administrative process. Specifically, Defendants contend that Faught exhausted his administrative remedies only with regard to his claim that Dr. Alger delayed scheduling his surgery from September 2011 to March 2012.

Defendants contend that Faught did not exhaust his administrative remedies regarding his other grievances because his grievance was returned without action because it was untimely.  In turn, they contend that it was untimely because Faught submitted the grievance more than thirty days after he hurt his wrist. Faught hurt his wrist on November 17, 2010, and he submitted his grievance on February 7, 2011. However, Defendants admit that "[a]pparently, the Grievance Coordinator was unclear on what exactly was being grieved and thought the thirty days had lapsed." *Defs' Reply*, Dkt. 17. Defendants therefore suggest that Faught should have submitted another form clarifying his

grievance, and stating that he was complaining of conduct which occurred on January 26, 2011, not the date he hurt his wrist.

The problem with Defendants' argument is that the grievance procedure does not indicate that an inmate should re-submit a grievance form clarifying his grievance if it is returned as untimely. Instead, the process states that "[i]f staff decides it is necessary to obtain more information, a staff member may interview the offender or request additional written explanation." *Purcell Decl.*, Dkt. 13-2, Ex. D, p.5. It further states that "grievance forms that are difficult to read or understand may be returned with instructions regarding needed changes." *Id*.

Here, Faught's grievance gave a fairly detailed and coherent statement that he was denied certain medical care on January 26, 2011. *Faught Aff.,* Ex. D, Dkt. 15-6. The alleged poor medical care related to the wrist injury which occurred in November 2010, but the grievance indicates that Faught took issue with the information and care provided to him by the medical staff on January 26, 2011. Thus, he had thirty days from that date to submit his grievance. He did so on February 7, 2011. If the Grievance Coordinator misunderstood the grievance, he or she should have requested additional information as required by the process.

Under these circumstances, it was reasonable for Faught to appeal the denial of his grievance as untimely. He then followed the appeal process, which exhausted his administrative remedies. Accordingly, none of Faught's claims are barred for failure to exhaust his administrative remedies, and Defendants' motion to dismiss will be denied.

## ORDER

**IT IS ORDERED THAT:**

1. Defendants' Motion to Dismiss (Dkt. 13) is **DENIED**.

DATED: April 22, 2013

B. Lynn Winmill
Chief Judge
United States District Court